[Cite as *E.T.P. v. H.R.P.*, 2026-Ohio-2816.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| E.T.P., | : | |
| Appellant, | : | |
| v. | : | No. 115466 |
| H.R.P., | : | |
| Appellee. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas,
Domestic Relations Division
Case No. DR-15-359951

### *Appearances:*

Stafford Cruz Law Company and Kelley R. Tauring, *for appellant*.

Nejame Law and Ryan J. Vescio, *for appellee*.

ANITA LASTER MAYS, J.:

{¶ 1} Plaintiff-appellant E.T.P. ("Father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, that overruled his objections to the magistrate's decision, granted the motion of

defendant-appellee H.R.P. ("Mother") to modify the allocation of parental rights and responsibilities, and designated Mother the residential parent and legal custodian of the parties' minor child. Father raises three assignments of error, challenging the trial court's subject-matter jurisdiction, its refusal to disqualify Mother's counsel, and its modification of the prior custody decree. For the reasons that follow, we affirm the judgment.

## I. Factual and Procedural History

{¶ 2} Father and Mother were married on December 12, 2010, and one child was born of the marriage in 2011. The parties were divorced by a judgment entry of divorce journalized May 25, 2016, which adopted a shared-parenting plan and designated Mother the residential parent for school-placement purposes.

{¶ 3} The parties' post-decree litigation has been protracted and continuous. In 2017 and 2018, Mother filed successive motions to terminate the shared-parenting plan and to relocate the child to Florida. Those motions were tried before a magistrate over 11 days between October 2018 and February 2019. On April 10, 2019, the magistrate issued a decision terminating the shared-parenting plan, denying Mother's request to be designated residential parent, and recommending that Father be designated the residential parent and legal custodian. By judgment entry journalized December 13, 2019, the trial court overruled Mother's objections in relevant part and designated Father as residential parent and legal custodian (the "2019 decree").

{¶ 4} Mother appealed. This court affirmed the 2019 decree, holding that the trial court did not abuse its discretion in designating Father the sole residential parent and legal custodian or in terminating the shared-parenting plan. *See Perrin v. Perrin*, 2021-Ohio-2581 (8th Dist.) (the "prior appeal").

{¶ 5} Mother filed a motion to modify on November 29, 2021, that she voluntarily dismissed on March 23, 2022. On July 13, 2022, the parties entered an agreed judgment entry that adjusted the child's summer, holiday, communication, and exchange schedule (the "2022 AJE"). The 2022 AJE did not disturb Father's designation as residential parent and legal custodian.

{¶ 6} Attorney Ryan J. Vescio ("Vescio"), Mother's husband and the child's stepfather, first appeared on his own behalf in January 2022 in connection with a subpoena and filed an amended notice of appearance as co-counsel for Mother on June 7, 2022. He thereafter filed numerous pleadings and appeared at numerous hearings on Mother's behalf.

{¶ 7} On March 29, 2024, Mother filed the motion to modify the parenting order that underlies this appeal, alleging, among other things, that the child's needs had evolved as he matured and that Father had become increasingly unable to meet the child's emotional needs. Mother did not file a parenting-proceeding affidavit under R.C. 3127.23 with the motion. The trial court appointed a guardian ad litem ("GAL") on May 23, 2024.

{¶ 8} On November 27, 2024, the business day before trial, Father moved to disqualify Vescio as Mother's counsel, asserting a conflict of interest under

Prof.Cond.R. 1.7 and Vescio's status as a necessary fact witness under Prof.Cond.R. 3.7. The trial court denied the motion by entry dated December 3, 2024.

{¶ 9} Trial proceeded before the magistrate on December 3 and 5, 2024. At the outset, Father orally moved to dismiss for lack of subject-matter jurisdiction based on Mother's failure to file the R.C. 3127.23 affidavit. The magistrate denied the motion, observing that the court had presided over the matter for many years and knew where the child had resided. The magistrate heard testimony from Father, Mother, the GAL, and other witnesses.

{¶ 10} The magistrate issued a decision on April 4, 2025, granting Mother's motion, designating Mother the residential parent and legal custodian, and awarding Father the visitation schedule previously allocated to Mother. Father filed objections and supplemental objections. By judgment entry journalized July 25, 2025, the trial court overruled Father's objections and adopted the magistrate's decision in full. Father timely appealed and assigned the following assignments of error:

> 1. The trial court committed reversible error when it denied E.P.'s Motion to Dismiss, granted H.V.'s Motion to Modify, and overruled the father's objections, absent subject-matter jurisdiction.

> 2. The trial court erred and abused its discretion by failing to disqualify H.V.'s husband from representing her as Counsel of Record under the Rules of Professional Conduct.

> 3. The trial court erred as a matter of law and abused its discretion by modifying the allocation of parental rights and responsibilities and designating H.V. as the residential parent and legal custodian.

## II. Law and Analysis

### A. Continuing Subject-Matter Jurisdiction

{¶ 11} In his first assignment of error, Father contends that Mother's failure to file the parenting-proceeding affidavit required by R.C. 3127.23 deprived the trial court of subject-matter jurisdiction, rendering the July 25, 2025 judgment void ab initio.

{¶ 12} Whether a court possesses subject-matter jurisdiction is a question of law that we review de novo. *Martindale v. Martindale,* 2016-Ohio-524, ¶ 27 (4th Dist.). Under that standard, we afford no deference to the trial court's determination and independently review the record to determine whether the judgment is appropriate. *Klarfeld v. Vestige Group, L.L.C.,* 2025-Ohio-2678, ¶ 9 (8th Dist.).

{¶ 13} The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in R.C. Ch. 3127, defines a court's subject-matter jurisdiction to make a child-custody determination. *Mireles v. Veronie,* 2020-Ohio-3078, ¶ 6 (9th Dist.). The UCCJEA sets up clear rules regarding subject-matter jurisdiction to determine child custody and visitation matters. *Dorazio v. Dorazio,* 2016-Ohio-713, ¶ 10 (8th Dist.). R.C. 3127.15 furnishes the exclusive jurisdictional basis for an Ohio court to make such a determination. *In re M.R.J.,* 2019-Ohio-2755, ¶ 17 (4th Dist.); R.C. 3127.15(B). The parenting-proceeding affidavit in R.C. 3127.23 is the mechanism for putting the jurisdictional facts (residences, other proceedings, etc.) before the court so it can decide if R.C. 3127.15 is satisfied. R.C. 3127.23(A) provides:

Each party in a child custody proceeding, in the party's first pleading or in an affidavit attached to that pleading, shall give information if reasonably ascertainable under oath as to the child's present address or whereabouts, the places where the child has lived within the last five years, and the name and present address of each person with whom the child has lived during that period.

{¶ 14} Father correctly observes that the word "shall" is ordinarily construed as mandatory. *Gilreath v. Dept. of Job & Family Servs.,* 2024-Ohio-103, ¶ 43. He conflates, however, two distinct requirements. R.C. 3127.15 *confers* jurisdiction; R.C. 3127.23 prescribes the affidavit by which a movant ordinarily *demonstrates* the jurisdictional facts. The failure to file that affidavit does not, alone, divest a court of jurisdiction it otherwise possesses under R.C. 3127.15. "It is only when the trial court lacks subject-matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable." *In re K.K.,* 2022-Ohio-3888, ¶ 9. Because the domestic relations court's subject-matter jurisdiction over custody proceedings derives from R.C. 3127.15 — and that jurisdiction is undisputed here — any deficiency in the R.C. 3127.23 affidavit goes, at most, to the court's exercise of jurisdiction over this particular case and does not render the judgment void ab initio as Father contends.

{¶ 15} The Supreme Court of Ohio has long refused to treat the affidavit requirement as a rigid, mechanical rule. In *In re Complaint for Writ of Habeas Corpus for Goeller*, 2004-Ohio-5579, the Court explained that the requirement that the affidavit accompany a party's first pleading "has been relaxed to allow amended pleadings or subsequent filings to include the affidavit information," and cautioned

that a mechanistic interpretation could render the State's custody statutes a nullity. *Id.* at ¶ 10-12, citing *In re Palmer*, 12 Ohio St.3d 194 (1984).

{¶ 16} This court applied that principle in *In re K.B.,* 2015-Ohio-4088 (8th Dist.). There, as here, the parties had previously been before the court, which was "well aware of where and with whom the child had been living" and aware of the prior proceedings. *Id.* at ¶ 18. We held that, even without the affidavit, the trial court was able to ascertain that it had jurisdiction and that the absence of the affidavit did not divest the domestic relations court of jurisdiction. *Id.*; *see also Sumerford v. Sumerford,* 2012-Ohio-1842, ¶ 16 (10th Dist.).

{¶ 17} The record here presents an even stronger case for jurisdiction than *In re K.B.* The same court has presided over this family's custody litigation continuously since 2017, conducting numerous hearings, an 11-day trial, and a prior round of appellate-tested proceedings concerning this very child. The court was intimately familiar with the child's residential history and with the absence of any competing proceeding in another jurisdiction. The purpose the R.C. 3127.23 affidavit serves, to apprise the court of facts bearing on home-state jurisdiction and the existence of competing proceedings was, therefore, fully satisfied here, and the record demonstrated the court's continuing jurisdiction under R.C. 3127.16.

{¶ 18} Father's reliance on *Frew v. Frew,* 2008-Ohio-4203 (5th Dist.), is misplaced. *Frew* affirmed the dismissal of an initial dissolution proceeding where the parties failed to file the required affidavits within a reasonable time after being notified of the deficiency. *Id.* at ¶ 12. It did not hold that the affidavit is an

independent jurisdictional prerequisite that no other record can satisfy; it addressed a want-of-prosecution dismissal in a newly filed action in which the court had no independent familiarity with the child's circumstances. The present case is inapposite. Father's argument that the trial court improperly shifted the burden of proof likewise fails. The court did not require Father to disprove jurisdiction; rather, R.C. 3127.23(B), independently authorized the court to confirm subject-matter jurisdiction through an alternative method to the affidavit.

{¶ 19} Because the trial court possessed subject-matter jurisdiction under R.C. 3127.15, notwithstanding the absence of an R.C. 3127.23 affidavit, the July 25, 2025 judgment is not void.

{¶ 20} Accordingly, Father's first assignment of error is overruled.

## B. Motion to Disqualify Counsel

{¶ 21} Father next contends that the trial court abused its discretion by declining to disqualify Vescio under Prof.Cond.R. 1.7 and 3.7.

{¶ 22} We review a trial court's ruling on a motion to disqualify counsel for an abuse of discretion. *Sholar v. Sholar,* 2025-Ohio-4883, ¶ 14 (2d Dist.). An abuse of discretion occurs where a court applies the wrong legal standard, misapplies the correct standard, or relies on clearly erroneous findings of fact. *R.E.S. v. M.J.M.,* 2025-Ohio-546, ¶ 18 (8th Dist.). Disqualification is a drastic measure that should not be imposed unless necessary, and it interferes with a party's right to counsel of choice. *Quiros v. Morales,* 2007-Ohio-5442, ¶ 15 (8th Dist.); *Kala v. Aluminum Smelting & Refining Co.*, 1998-Ohio-439.

{¶ 23} The trial court denied the motion on two independent grounds: it was untimely and Father failed to show that Vescio was a necessary witness whose testimony was unobtainable from other sources. Either ground, if sustainable, supports the court's exercise of discretion.

{¶ 24} As to timeliness, a motion to disqualify should be raised soon after the onset of litigation, or at least within a reasonable time once the facts are known, and undue delay may operate as a waiver where it results in serious prejudice or substantial hardship to the opposing party. *Stanley v. Bobeck,* 2009-Ohio-5696, ¶ 9-10 (8th Dist.). Vescio appeared as co-counsel in June 2022 and thereafter filed numerous pleadings and appeared at numerous hearings, all while Father was represented by a succession of counsel. Father did not move to disqualify until the business day before trial, more than two years later. The trial court reasonably determined that disqualifying counsel on the eve of trial would have imposed substantial hardship and created delays inconsistent with the child's best interest in a prompt resolution.

{¶ 25} As to necessity, Prof.Cond.R. 3.7 prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness, subject to enumerated exceptions. A "necessary witness" is one whose testimony is both admissible and unobtainable through other trial witnesses; testimony that is merely relevant, or even highly useful, is not necessarily "necessary." *Gonzalez-Estrada v. Glancy,* 2017-Ohio-538, ¶ 12 (8th Dist.); *Goebel v. Hopkins,* 2024-Ohio-194, ¶ 18 (12th Dist.). A party's mere declaration of an intention to call opposing counsel as a

witness is an insufficient basis for disqualification, even if counsel could give relevant testimony. *Gonzalez-Estrada* at ¶ 12.

{¶ 26} Father did not carry that burden. Although he asserted that Vescio possessed firsthand knowledge of the child's circumstances in Mother's home and listed Vescio as a potential witness, neither his motion nor his brief identified any admissible testimony obtainable only from Vescio. As the trial court observed, the same matters were available from Mother, the GAL, and the parenting coordinator. That Vescio testified in the 2018-2019 proceedings does not alter the analysis; no such testimony was offered or admitted at the 2024 trial.

{¶ 27} Father's argument under Prof.Cond.R. 1.7 fares no better. The conflict he describes that Vescio's marital and financial interests prevent him from rendering detached advice, is, in the first instance, a conflict personal to the client whom the rule protects. Mother, the affected client, did not seek Vescio's removal. Although the trial court retains inherent authority to disqualify counsel to protect the integrity of its proceedings, the trial court reasonably determined that no such intervention was warranted here, particularly given the availability of the relevant testimony from other witnesses and the untimeliness of the motion.

{¶ 28} On this record, we cannot say the trial court applied an incorrect legal standard or relied on clearly erroneous findings of fact.

{¶ 29} The second assignment of error is overruled.

**C. Modification of the Allocation of Parental Rights and Responsibilities**

{¶ 30} In his final assignment of error, Father contends that the trial court abused its discretion in modifying custody because the record establishes no change in circumstances and because the court failed to make the findings required by R.C. 3109.04(E)(1)(a).

{¶ 31} We review a custody-modification decision for an abuse of discretion. *T.H. v. N.H.*, 2021-Ohio-217, ¶ 46 (10th Dist.). An abuse of discretion connotes an attitude that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). This deferential standard is especially appropriate in custody matters, where the trial court is best positioned to weigh the evidence and judge the credibility of the witnesses. *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997).

{¶ 32} R.C. 3109.04(E)(1)(a) provides that a court shall not modify a prior decree allocating parental rights unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or a parent, and that modification is necessary to serve the child's best interest. Where, as here, neither a residential parent's agreement nor integration with consent applies, the court must further find that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). A modification thus requires findings that (1) a change in circumstances has occurred; (2) modification serves the child's best interest; and

(3) the benefits of the change outweigh any harm, and the record must adequately support each. *In re N.J.V.,* 2025-Ohio-375, ¶ 22 (8th Dist.); *Craig v. Athey,* 2025-Ohio-336, ¶ 18 (7th Dist.).

{¶ 33} A threshold dispute concerns the proper baseline against which change is measured. Father urges that the relevant baseline is the July 2022 AJE; on that premise, he argues, the child's wish to relocate to Florida cannot be a "change" because it predates the 2022 AJE. We reject the premise. For purposes of R.C. 3109.04(E)(1), the "prior decree" is the decree that actually allocated parental rights. *In re J.C.,* 2019-Ohio-107, ¶ 20, 28 (8th Dist.). The 2022 AJE adjusted only parenting-time logistics and did not reallocate residential-parent status, and Mother's November 2021 motion was voluntarily dismissed under Civ.R. 41(A) without any adjudication on the merits. The decree that allocated parental rights, and thus the baseline, is the 2019 decree.

{¶ 34} Measured against the 2019 decree, the record supports the trial court's finding of a change in circumstances. At the time of the 2019 proceedings, the child was seven and the then GAL and a forensic evaluator reported that the child did not want to move to Florida. By the 2024 trial, the child was 13 and, according to the GAL's testimony, consistently and emphatically expressed a preference to live with Mother in Florida, where he felt more supported and connected. This court has recognized that a child's maturation from early childhood into adolescence may itself constitute a sufficient change of circumstances, *In re J.C.* at ¶ 28, citing *Perz v. Perz*, 85 Ohio App.3d 374 (6th Dist. 1985), and the Supreme

Court has observed that even a modest change in age, combined with deterioration in the parent-child relationship, may suffice. *Davis,* 77 Ohio St.3d at 416-417. The record reflects both.

{¶ 35} Father places great weight on the GAL's affirmative answer on cross-examination that what had "changed" since 2022 was the child's "age." Read in context, that testimony does not undermine the existence of a change in circumstances; it pinpoints what is driving it. The GAL elaborated that the child's needs had evolved with adolescence, that the issues facing a 13-year-old differ substantially from those facing a ten-year-old, and that the child's emotional needs were not being met in Father's home. The trial court was entitled to credit that testimony and the corroborating testimony of Mother and another witness. That Father offered a markedly different account of his relationship with the child presented a credibility question for the trier of fact, not a basis for reversal. *Davis* at 418.

{¶ 36} Father contends that, even assuming a change in circumstances, the trial court failed to make the finding required by R.C. 3109.04(E)(1)(a)(iii) — that the harm of changing the child's environment is outweighed by its advantages. The statute requires that finding, and an entry devoid of any such determination would be deficient. *In re N.J.V.* at ¶ 22. On this record, however, we cannot say the requisite determination is absent. The trial court adopted in full a magistrate's decision rendered after a two-day trial.

## Change of Circumstances

{¶ 37} The record reflects that circumstances had materially changed since the 2019 decree. At the time of the earlier proceedings, the child did not want to move to Florida, whereas by the time of the present motion the child had entered adolescence, started middle school, turned 13, and developed new emotional and social needs. The child had become increasingly isolated and distant from Father, whose testimony describing the nature of his relationship with the child was the opposite of the child's disclosures to the GAL and the child's mental-health providers. Moreover, the GAL's recommendation had changed to support the child's relocation and placement with Mother. These circumstances reflect a materially different situation from the one considered in 2019.

## Best Interest of the Child

{¶ 38} In assessing best interest, the trial court credited evidence that the child was experiencing loneliness, emotional isolation, and a lack of meaningful support in Ohio. It contrasted those circumstances with the child's stronger sense of belonging, emotional support, and connection with Mother and her family in Florida. The court also gave weight to the GAL's updated recommendation and the child's expressed wishes, concluding that the child's best interests would be served by granting the motion to modify custody.

## Harm Outweighed by Benefit of Change

{¶ 39} The record supports a finding that the benefits of a change in custody outweighed any harm associated with changing the child's residential parent and

environment. Although a custody change would necessarily involve disruption, the advantages of placing the child in a more supportive and emotionally appropriate environment with Mother exceeded the likely harm from the transition. In reaching that conclusion, the court relied on the child's developmental needs, his deteriorating emotional condition in Ohio, and the GAL's revised recommendation in favor of modification.

{¶ 40} Because the record supports the trial court's findings, we cannot say that the court's decision was unreasonable, arbitrary, or unconscionable. Accordingly, Father's third assignment of error is overruled.

### III. Conclusion

{¶ 41} We note that the record does not contain an R.C. 3127.23(A) parenting-proceeding affidavit filed in connection with Mother's motion to modify custody. As discussed above, this omission does not divest the domestic relations court of subject-matter jurisdiction it otherwise possesses under R.C. 3127.15 and the court's extensive familiarity with this family independently satisfies the informational purpose of the affidavit.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, A.J., and
DEENA R. CALABRESE, J., CONCUR